# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JOSEPH JAMES SCHMIDT,<br><br>    Plaintiff,<br><br>    v.<br><br>RAJIV SHAH, Administrator, United States Agency for International Development,<br><br>    Defendant. | Civil Action No. 08–2185 (CKK) |

**MEMORANDUM OPINION**[1]
(March 18, 2010)

      This is a Freedom of Information Act ("FOIA") case brought by Plaintiff Joseph James Schmidt against his former employer, the United States Agency for International Development ("USAID"). Schmidt claims that USAID has violated the Freedom of Information Act, 5 U.S.C. § 552, by failing to timely respond to three requests he submitted to USAID on May 14, September 9, and September 16, 2008. Schmidt seeks a complete response to his requests, with no exceptions, and a waiver of any applicable charges based on the agency's failure to provide a timely response. USAID contends that it has now produced all responsive documents and properly redacted or withheld certain documents pursuant to FOIA Exemption 5, *see* 5 U.S.C. § 552(b)(5), and FOIA Exemption 6, *see id.* § 552(b)(6). Defendant[2] has filed a [16] Motion for

---

    [1] Pursuant to Rule 25(d), Rajiv Shah has been substituted for Henrietta Fore as the defendant in this action.

    [2] Schmidt has brought this action against Rajiv Shah in his official capacity as USAID Administrator. However, FOIA actions may be brought only against an agency. *See* 5 U.S.C. § 552(a)(4)(B). Defendant does not seek dismissal on this basis. Therefore, the Court shall substitute USAID as the real party in interest.

Summary Judgment on this basis, which Schmidt opposes. Schmidt has also filed a [19] Motion Regarding Defendant's Lack of Responsiveness to Freedom of Information Requests (hereinafter, "Pl.'s Mot."), which the Court construes as a cross-motion for summary judgment. Schmidt has filed numerous briefs in support of his position and in opposition to Defendant's motion, and the motions are now ripe for decision.[3] After a thorough review of the parties' submissions and attachments thereto and applicable case law and statutory authority, the Court shall GRANT-IN-PART and DENY-IN-PART WITHOUT PREJUDICE Defendant's motion for summary judgment, granting the motion as to all issues except the adequacy of the search regarding electronic back-up tapes and records in the Office of the Inspector General, the Office of Financial Management, or the Office of the General Counsel, with respect to which the motion shall be denied without prejudice. The Court shall also DENY Schmidt's construed motion for summary judgment, denying without prejudice with respect to the adequacy of the search as described above.

---

[3] Apart from his construed motion for summary judgment, which includes exhibits filed in support, Schmidt has filed three memoranda with supporting materials. *See* [18] Plaintiff's Opposition to Defendant's Withholding, Concealment and Redaction of Requested Documents and Information Related to Freedom of Information Act (FOIA) Requests; [21] Plaintiff's Response in "Opposition" of Defendant's Motion for Summary Judgement [sic] and Request for a Trial; and [24] Plaintiff's Response in Opposition to Defendant's Faulty Argument for Summary Judgment and in Favor of Plaintiff's Request for a Trial or Court Sponsored Mediation. Because some of these filings exceeded the page limits in the Local Rules, Schmidt has filed a [26] Motion Requesting the Court's Permission and Acceptance of Filings that Deviate from Local Rule 7(h) and 7(e), which he subsequently resubmitted. *See* Dkt. Nos. 26, 27. Because Schmidt is proceeding *pro se* and it appears that he has attempted in good faith to comply with the Local Rules, the Court shall GRANT his motion to accept these filings and consider them in the context of adjudicating the parties' cross-motions for summary judgment.

# I. BACKGROUND

*A.     Schmidt's FOIA Requests*

On May 14, 2008, Schmidt submitted a FOIA request via email to USAID. The request sought the following information: "All email correspondence (emails, memos and letter) produced by the following individuals related specifically to me (but addressed to persons other than me) as of August 1, 2006, including any deleted emails on backup tape: [list of nine individuals]." *See* Def.'s Stmt.[4] ¶ 2. Schmidt followed up on his request with email inquiries on June 24, June 30, and July 9, 2008. Answer at 2. On July 10, 2008, USAID FOIA Team Leader Sylvia Lankford responded to Schmidt and apologized for an apparent mix-up caused by an earlier FOIA request submitted by Schmidt that is not relevant to this litigation. *See* Pl.'s Mot., Ex. 3 (7/10/2008 email from Lankford to Schmidt). Schmidt's FOIA request was given a tracking number (F-00237-08) and assigned to Ms. Gwen Marcus for processing. *Id.* On July 15, 2008, Ms. Marcus responded to Schmidt and assured him that the agency was working towards completing his request. *Id.* (7/15/2008 email from Marcus to Schmidt). On September 29, 2008, Schmidt sent a complaint by email about the delay in processing his May 14 request. *See id.* (9/29/2008 email from Schmidt to Lankford).

---

[4] As a preliminary matter, the Court notes that it strictly adheres to the text of Local Civil Rule 7(h) (formerly Rule 56.1 when resolving motions for summary judgment). *See Burke v. Gould*, 286 F.3d 513, 519 (D.C. Cir. 2002) (finding district courts must invoke the local rule before applying it to the case). The Court has advised the parties that it strictly adheres to Rule 7(h) and has stated that it "assumes facts identified by the moving party in its statement of material facts are admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion." [13] Scheduling Order at 2 (May 4, 2009). Thus, in most instances the Court shall cite only to one party's Statement of Material Facts ("Stmt.") unless a statement is contradicted by the opposing party. The Court shall use "Def.'s Stmt." to refer to the revised Statement of Material Facts filed by Defendant in its opposition to Schmidt's dispositive motion. The Court shall also cite directly to evidence in the record, where appropriate.

On September 9, 2008, Schmidt submitted a second FOIA request seeking "[a]ll information, including email correspondence, memos and letters" regarding fifteen separate matters identified by Schmidt. Def.'s Stmt. ¶ 3. Many of these matters pertain to issues that were raised by Schmidt in a related case that was dismissed by this Court. *See Schmidt v. Shah*, Civil Action No. 08-1831 (D.D.C. Mar. 17, 2010). The fifteen items requested can be summarized as follows:[5]

1. information regarding the alleged use of Iraq-related appropriations for non-Iraq-related services and an alleged cover-up thereof;
2. information provided by a particular named USAID official to other agency officials regarding Schmidt's protected EEO information, which Schmidt believed to be an unlawful disclosure;
3. "Information relating to the Office of Acquisition and Assistance's handling of [Schmidt's] confidential medical leave information";
4. "Information regarding the sharing of [Schmidt's] confidential employee and medical information" by three particular named agency officials and other unnamed agency officials in violation of the Privacy Act;
5. information regarding the sharing of Schmidt's confidential EEO information on the part of two named individuals in the USAID's Office of Equal Opportunity Programs (EOP);
6. information regarding USAID's evaluation of Schmidt's application for employment under job announcement number AID-08-0019A-DC13;
7. information related to the agency's review of Schmidt's Leave without Pay (LWOP), including its determination regarding over $10,000 allegedly owed to Schmidt and the rationale for not reimbursing him for funds erroneously taken from his paychecks;
8. information regarding the agency's decision to deactivate Schmidt's USAID identification badge;
9. information pertaining to one named agency official's refusal to provide Schmidt with a written job recommendation;
10. information generated by a named USAID attorney for review and comment by other agency officials regarding Schmidt's employment with the agency;
11. meeting notes relating to a teleconference between Schmidt and his former supervisor when she purportedly denied Schmidt a "reasonable accommodation" for his disability;

---

[5] The Court has paraphrased many of Schmidt's requests and omitted the names of specific agency officials identified by Schmidt.

12. information regarding the agency's alleged gross negligence in not promptly removing Schmidt from its payroll system following his resignation and producing a Standard Form 50 in a reasonable period of time
13. information generated by the EOP, the Office of Acquisition and Assistance, the Office of Security, and other officers involving USAID's allegedly unlawful actions against Schmidt regarding his employment;
14. "Information regarding [Schmidt's] forced/pressured resignation generated by members of GC, OAA, EOP et al [sic]"; and
15. information regarding sensitivity training of USAID personnel since October 2006 relating to race, gender, sexual harassment, and hostile working environment.

Def.'s Stmt. ¶ 3.

On September 16, 2008, Schmidt submitted a third FOIA request. This request sought: (1) "copies of any settlement agreements reached by [USAID] from 1995 to present regarding possible violations of FAR [Federal Acquisition Regulation] 16.505 fair opportunity"; (2) "[a]ny information or lists produced by USAID since 1995 regarding possible violations of FAR 16.505"; and (3) "written 'Justifications' for task orders awarded both in Washington and in overseas missions (under Indefinite Quantity Contracts (IQCs)) from 1995 to present, where FAR 16.505 and/or fair opportunity provisions within the contract were not properly followed." Def.'s Stmt. ¶ 4. Schmidt also asked that his identity be kept confidential during the agency's searches for records. *Id.*

USAID processed the two September requests as a single FOIA inquiry and designated it as File No. F-00026-09. Def.'s Stmt. ¶ 5.

B. *USAID's Search for Responsive Records*

USAID processes FOIA requests through its Information and Records Division in the Bureau of Management ("FOIA Office"). *See* Def.'s Mot., Ex. 1 (Decl. of Sylvia Putman Lankford) (hereinafter, "Lankford Decl.") ¶ 1. When the FOIA Office receives a request, a Public Affairs Specialist contacts any office that might have the information requested, collects

and organizes all responsive documents, and consults with the USAID Office of the General Counsel to ensure that no protected, non-public information is inadvertently disclosed. *Id.* ¶ 2. Upon receiving Schmidt's requests, the FOIA Office determined that five different USAID offices should be searched for responsive records: the Office of Equal Opportunity Programs, Office of the Chief Information Officer, Office of Acquisition and Assistance, Office of Human Resources, and Office of the Chief Financial Officer. *Id.* ¶ 14. Each of these offices was asked to search for the relevant documents within a certain timeframe, 2006-2008. *Id.* ¶ 15. The subject matter of the searches varied by each office, but some of the search terms were "misuse of Iraq funding," "violation of EEO regulations," "leave without pay," and "forced/pressured resignation." *Id.* ¶ 16. Each of the offices provided all responsive documents to the FOIA Office or to the Office of General Counsel to be produced to Schmidt. *Id.* ¶ 18.

In response to Schmidt's May 14, 2008, request, a forensic search was conducted by the Office of the Chief Information Officer on all emails sent or received by the USAID work email addresses of all individuals targeted in Schmidt's requests. Lankford Decl. ¶ 17. Four email accounts were inaccessible because those employees had left the agency. *Id.* Emails from the other individuals' accounts were extracted if they included iterations of Schmidt's name, and they were then reviewed by the Office of General Counsel. *Id.* Amitabh Khardori, an attorney in the Office of General Counsel, reviewed the extracted emails and identified those that were responsive to Schmidt's specific requests. *See* Def.'s Opp'n, Ex. 2 (Decl. of Amitabh Khardori) (hereinafter, "Khardori Decl.") ¶ 8. Because Schmidt's May 2008 request did not specify any particular substance, Mr. Khardori organized the responsive documents according to the categories listed in his September 2008 requests. *Id.* ¶ 10.

6

C.     *USAID's Production of Records*

USAID's Information and Records Division sent Schmidt all responsive records in two batches. The first set of records was sent with a letter on April 17, 2009, advising that 255 pages of responsive documents were provided and that no responsive documents were found for items numbered 5, 10, 11, and 15 from Schmidt's September 9, 2008, request. Lankford Decl. ¶ 9. The letter also advised that, with respect to Schmidt's September 16, 2008, request, there were no responsive documents regarding request item 1 and that requests 2 and 3 were vague and overbroad. *Id.* This first set consisted of documents that contained no FOIA redactions or withholdings apart than personal contact information of government employees under FOIA Exemption 6.[6] *Id.* ¶ 8. The FOIA Office sent Schmidt the second set of responsive documents with a letter on April 23, 2009. *Id.* ¶ 10. The letter advised that the second set of documents consisted of 112 pages and that no additional documents regarding the September 9, 2008, FOIA request items 4, 5, 6, 10, and 15 were included. *Id.* The second set consisted of documents that contained some redactions or withholdings based on FOIA Exemption 5.[7] *Id.* The second set of documents also contained some redactions based on FOIA Exemption 6. *Id.* ¶ 11. These latter redactions were identified on the documents themselves. *Id.*[8]

---

[6] FOIA Exemption 6 covers "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6).

[7] FOIA Exemption 5 covers "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5)

[8] Schmidt contends that Defendant has failed to produce any documents in response to his May 2008 request. However, Mr. Khardori's declaration explains that responses to the May 2008 request were included with and categorized according to the responses to the September

## II. LEGAL STANDARD

In reviewing motions for summary judgment under FOIA, the Court must conduct a *de novo* review of the record. *See* 5 U.S.C. § 522(a)(4)(B). In the FOIA context, "*de novo* review requires the court to 'ascertain whether the agency has sustained its burden of demonstrating that the documents requested . . . are exempt from disclosure under the FOIA.'" *Assassination Archives & Research Ctr. v. Cent. Intelligence Agency*, 334 F.3d 55, 57 (D.C. Cir. 2003) (quoting *Summers v. Dep't of Justice*, 140 F.3d 1077, 1080 (D.C. Cir. 1998)). Summary judgment is proper when "the pleadings, the discovery [if any] and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

All underlying facts and inferences are analyzed in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). Only after an agency seeking summary judgment proves that it has fully discharged its FOIA obligations is summary judgment appropriate. *Moore v. Aspin*, 916 F. Supp. 32, 35 (D.D.C. 1996) (citing *Weisberg v. Dep't of Justice*, 705 F.2d 1344, 1350 (D.C. Cir. 1983). In opposing a motion for summary judgment, a party must offer more than conclusory statements. *See Broaddrick v. Exec. Office of the President*, 139 F. Supp. 2d 55, 65 (D.D.C. 2001) (citing *Laningham v. U.S. Navy*, 813 F.2d 1236, 1241 (D.C. Cir. 1987)). Indeed, a plaintiff pursuing an action under FOIA must establish that the agency has improperly claimed an exemption as a matter of law or that the agency failed to segregate and disclose all non-exempt information in the requested documents. *See Perry-Torres v. Dep't of State*, 404 F. Supp. 2d 140, 142 (D.D.C. 2005).

---

2008 requests. *See* Khardori Decl. ¶ 10.

Congress enacted FOIA for the purpose of introducing transparency to government activities. *See Stern v. Fed. Bureau of Investigation*, 737 F.2d 84, 88 (D.C. Cir. 1984). Congress remained sensitive, however, to the need to achieve balance between this objective and the vulnerability of "legitimate governmental and private interests [that] could be harmed by release of certain types of information." *Critical Mass Energy Project v. Nuclear Regulatory Comm'n*, 975 F.2d 871, 872 (D.C. Cir. 1992); *see also Summers v. Dep't of Justice*, 140 F.3d 1077, 1079 (D.C. Cir. 1998). Accordingly, FOIA provides nine exemptions pursuant to which an agency may withhold requested information. *See* 5 U.S.C. §§ 552(a)(4)(B), (b)(1)-(9). The agency must demonstrate the validity of any exemption that it asserts. *See id.*; *Beck v. Dep't of Justice*, 997 F.2d 1489, 1491 (D.C. Cir. 1993) ("Consistent with the purpose of the Act, the burden is on the agency to justify withholding requested documents.") In addition, summary judgment may be granted on the basis of the agency's accompanying affidavits or declarations if they describe "the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor evidence of agency bad faith." *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981). These affidavits may be submitted by an official who coordinated the search, and need not be from each individual who participated in the search. *See SafeCard Servs. v. Sec. & Exch. Comm'n*, 926 F.2d 1197, 1200 (D.C. Cir. 1991). Where the adequacy of the search is in doubt, the agency "must show beyond material doubt . . . that it has conducted a search reasonably calculated to uncover all relevant documents." *Weisberg*, 705 F.2d at 1351. But "[t]here is no requirement that an agency search every record system." *Oglesby v. U.S. Dep't of the Army*, 920 F.2d 57, 68 (D.C. Cir. 1990).

An agency also has the burden of detailing what proportion of the information in a document is non-exempt and how that material is dispersed throughout the document. *Mead Data Cent., Inc. v. U.S. Dep't of the Air Force*, 566 F.2d 242, 261 (D.C. Cir. 1977). Any non-exempt information that is reasonably segregable from the requested records must be disclosed. *Oglesby v. U.S. Dep't of the Army*, 79 F.3d 1172, 1178 (D.C. Cir. 1996). In addition, district courts are obligated to consider segregability issues *sua sponte* even when the parties have not specifically raised such claims. *Trans-Pac. Policing Agreement v. U.S. Customs Serv.*, 177 F.3d 1022, 1028 (D.C. Cir. 1999).

### III. DISCUSSION

In considering Defendant's motion for summary judgment, the Court shall address the adequacy of the agency's searches for records and the exemptions invoked, as well as any segregability issues that arise.

*A.     Adequacy of Search for Records*

USAID argues that it has adequately searched for records responsive to Schmidt's three FOIA requests. "To win summary judgment on the adequacy of a search, the agency must demonstrate beyond material doubt that its search was 'reasonably calculated to uncover all relevant documents.'" *Nation Magazine v. U.S. Customs Serv.*, 71 F.3d 885, 890 (D.C. Cir. 1995) (quoting *Truitt v. Dep't of State*, 897 F.2d 540, 542 (D.C. Cir. 1990)). To meet its burden, the agency may submit affidavits or declarations that explain in reasonable detail and in a non-conclusory fashion the scope and method of the agency's search. *Perry v. Block*, 684 F.2d 121, 126 (D.C. Cir. 1982). The agency must show that it made a "good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the

information requested." *Oglesby*, 920 F.2d at 68; *see also Campbell v. U.S. Dep't of Justice*, 164 F.3d 20, 27 (D.C. Cir. 1998). In the absence of contrary evidence, such affidavits or declarations are sufficient to demonstrate an agency's compliance with FOIA. *Perry*, 684 F.2d at 127. A search need not be exhaustive, *Miller v. U.S. Dep't of State*, 779 F.2d 1378, 1383 (8th Cir. 1995), and the adequacy of the search is not determined by its results, but by the method of the search itself, *Weisberg v. U.S. Dep't of Justice*, 745 F.2d 1476, 1485 (D.C. Cir. 1984). An agency's failure to find a particular document does not necessarily indicate that its search was inadequate. *Wilbur v. CIA*, 355 F.3d 675, 678 (D.C. Cir. 2004); *Nation Magazine*, 71 F.3d at 892 n.7.

To prove the adequacy of its search, USAID has produced a declaration from Sylvia Lankford, a Public Affairs Specialist in the agency's Information and Records Division who is responsible for maintaining the FOIA files for requests processed in her office and coordinating responses to FOIA requests. *See* Lankford Decl. ¶¶ 1-2. USAID has also produced a declaration from Amitabh Khardori, an attorney in the USAID Office of the General Counsel who reviewed emails obtained through a forensic search for any records responsive to Schmidt's requests. *See* Khardori Decl. ¶¶ 2, 8. Their declarations indicate that the agency searched five different USAID offices for records responsive to Schmidt's three FOIA requests, including a forensic search for emails that may be responsive. The searches were targeted by key phrases that correlated to the substance of Schmidt's requests. The declarations are relatively detailed and not conclusory in nature.

Schmidt argues that the agency's search was not adequate because it did not turn up every record that Schmidt believes to exist and was conducted in bad faith. *See* Pl.'s Mot. ¶¶ 3, 8. However; "the focus of the adequacy inquiry is not on the results." *Hornbostel v. U.S. Dep't of*

*Interior*, 305 F. Supp. 2d 21, 28 (D.D.C. 2003). The fact that other responsive records may exist does not render a search inadequate. *Perry v. Block*, 684 F.2d at 128 ("The issue is not whether any further documents might conceivably exist but rather whether the government's search for responsive documents was adequate.") As for bad faith, Schmidt's allegations are conclusory and unsupported by evidence in the record. "Agency affidavits are accorded a presumption of good faith, which cannot be rebutted by 'purely speculative claims about the existence and discoverability of other documents.'" *SafeCard Servs.*, 926 F.2d at 1200 (quoting *Ground Saucer Watch, Inc. v. CIA*, 692 F.2d 770, 771 (D.C. Cir. 1981)).

Schmidt also argues that the agency should not have rejected his last two requests in September 2008 as vague or overbroad. When an agency is faced with a vague request, it "may construe the request as it reasonably sees fit, as long as it informs the requester of the defined scope of the request." *Hamilton Sec. Group Inc. v. Dep't of Hous. & Urban Dev.*, 106 F. Supp. 2d 23, 33 (D.D.C. 2000) (citing *Dettman v. U.S. Dep't of Justice*, 802 F.2d 1472, 1476 (D.C. Cir. 1986)). Schmidt admits that USAID informed him of his need to provide more discrete search parameters. *See* [24] Pl.'s Opp'n ¶ 7. Schmidt claims that USAID did not allow him the opportunity to refine his request, but he cites no evidence that he ever attempted to do so. *See id.*; [24] Pl.'s Stmt. ¶ 44. Schmidt does not claim, and the record does not suggest, that the agency ever rejected a narrowed request. "An agency need not honor a request that requires 'an unreasonably burdensome search.'" *Am. Fed'n of Gov't Employees, Local 2782 v. U.S. Dep't of Commerce*, 907 F.2d 203, 209 (D.C. Cir. 1990) (quoting *Goland v. CIA*, 607 F. 2d 339, 353 (D.C. Cir. 1978)). It is clear that Schmidt's final two requests—seeking "[a]ny information" produced by USAID since 1995 regarding "possible violations of FAR 16.505"—would require

12

the agency to "locate, review, redact, and arrange for inspection of a vast quantity of material." *See id.* In addition, the agency would need to make a complicated judgment call in order to determine what records might indicate a "possible violation" of fair opportunity provisions. Therefore, the Court finds that the agency was justified in designating Schmidt's last two requests as vague and overbroad.[9]

Schmidt also argues that the agency's search was inadequate because it did not include a review of electronic back-up tapes that may contain responsive emails. *See* Pl.'s Mot., ¶ 13; Pl.'s [24] Opp'n ¶ 10. Although there is no requirement that an agency search every record system, an agency must search every record system that is likely to turn up the information requested. *Oglesby*, 920 F.2d at 68. The agency's declarations do not indicate whether back-up tapes were included as part of the "forensic" search for emails. Because Schmidt specifically requested that back-up tapes be searched as part of his May 2008 request, USAID must, at the very least, explain whether or not such back-up tapes exist, were searched, or were likely to contain responsive records. *See id.* ("At the very least, [the agency] was required to explain in its affidavit that no other record system was likely to produce responsive documents.") The agency's declarations do not contain averments that all record systems likely to contain responsive documents were searched. In addition, Schmidt contends that the agency should have searched the Office of the Inspector General, the Office of Financial Management, and the Office of the General Counsel for responsive records. *See* [24] Pl.'s Stmt. ¶ 59. The agency's

---

[9] Schmidt has attached numerous exhibits to his briefing purportedly showing how the agency could have searched for documents relating to his last two FOIA requests. However, an agency is not required to "look beyond the four corners of the request for leads to the location of responsive documents." *Kowalczyk v. Dep't of Justice*, 73 F.3d 386, 389 (D.C. Cir. 1996).

declarations do not aver that the five offices searched were the only offices likely to contain responsive information. Accordingly, the Court cannot determine, based on the present record, whether or not USAID's search was adequate, and the agency is not entitled to summary judgment on this issue.

Schmidt argues that he is entitled to summary judgment because USAID has admitted that it failed to search for emails from all the employees whose records were requested. *See* [24] Pl.'s Stmt. ¶ 5. The Lankford Declaration explains that the Office of the Chief Information Officer was not able to access email accounts for certain employees who had left the agency. *See* Lankford Decl. ¶ 17. If back-up tapes containing these employees' emails exist and are within the control of USAID, then Schmidt may be entitled to summary judgment on this issue. However, if the agency does not have access to these tapes, then it will be entitled to summary judgment. *See SafeCard Servs.*, 926 F.2d at 1201 ("[T]he [agency] is not required to recreate or to reacquire a document that it no longer has.") On the current record, however, Schmidt is not entitled to summary judgment because he has not shown based on undisputed facts that USAID's search was inadequate as a matter of law. Therefore, the Court shall deny both parties' motions for summary judgment without prejudice as to the adequacy of the search.

Because "FOIA cases are typically and appropriately decided on motions for summary judgment," *Moore v. Bush*, 601 F. Supp. 2d 6, 12 (D.D.C. 2009), the Court shall permit the parties to file renewed motions for summary judgment after the agency has had an opportunity to supplement the record with new declarations. *See North v. U.S. Dep't of Justice*, 658 F. Supp. 2d 163, 176 (D.D.C. 2009) (allowing parties to refile motions for summary judgment where record was unclear as to the adequacy of the agency's search).

B.   *Applicability of FOIA Exemptions 5 and 6*

Defendant argues that it has properly withheld or redacted information pursuant to FOIA Exemptions 5 and 6. Exemption 5 protects "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 522(b)(5). Exemption 5 applies to materials that would be privileged in the civil discovery context, such as materials protected by the deliberative process privilege, the attorney-client privilege, and the attorney work-product privilege. *See NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 149 (1975). In order to "justify nondisclosure under Exemption 5, an agency must show that the type of material it seeks to withhold is generally protected in civil discovery for reasons similar to those asserted by the agency in the FOIA context." *Burka v. U.S. Dep't of Health & Human Servs.*, 87 F.3d 508, 517 (D.C. Cir. 1996). Exemption 6 protects information about individuals in "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 522(b)(6). The term "similar files" is construed broadly and is "intended to cover detailed Government records on an individual which can be identified as applying to that individual." *U.S. Dep't of State v. Wash. Post Co.*, 456 U.S. 595, 602 (1982) (citation omitted). "The threshold is fairly minimal, such that all information which applies to a particular individual is covered by Exemption 6, regardless of the type of file in which it is contained." *Conception v. FBI*, 606 F. Supp. 2d 14, 35 (D.D.C. 2009) (citations and internal quotation marks omitted). "Ultimately, an agency's justification for invoking a FOIA exemption is sufficient if it appears logical or plausible." *Larson v. Dep't of State*, 565 F.3d 857, 862 (D.C. Cir. 2009) (citation omitted).

In support of its argument that it has properly invoked Exemption 5, Defendant relies on the Lankford Declaration and a *Vaughn* index[10] that it has attached to its reply brief. *See* Lankford Decl. ¶ 12; Def.'s Reply, Ex. 1 (*Vaughn* index). Together, these documents describe each of the documents that were withheld or redacted based on Exemption 5 and specify the basis for the legal privilege that justifies their exemption. The index demonstrates that 36 documents contained redactions or were withheld entirely on the basis of either the attorney-client or attorney work-product privilege. The index identifies the date of each document, its author, its recipient, and subject matter; each document is a communication with someone in the USAID Office of the General Counsel. Only four documents—all draft settlement agreements—were withheld in their entirety. *See* Def.'s Reply, Ex. 1 at 5-6. This evidence clearly shows that the documents withheld or redacted constitute legal advice or communications with agency counsel regarding either Schmidt's legal proceedings or the agency's use of Iraq funds. Thus, the agency had a reasonable basis for withholding or redacting information based on the attorney-client and attorney work-product privileges pursuant to Exemption 5.

With respect to Exemption 6, the Lankford Declaration explains that two types of information were redacted from records: home telephone numbers of USAID employees and the identities of USAID employees unrelated to Schmidt's requests. *See* Lankford Decl. ¶ 11. In considering whether an agency has properly invoked Exemption 6, courts must balance the privacy interest in nondisclosure against the public interest in the release of the information. *Lepelletier v. FDIC*, 164 F.3d 37, 46 (D.C. Cir. 1999). This Court agrees with the agency that

---

[10] In *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973), the D.C. Circuit held that agencies should prepare an itemized index correlating each withheld document (or portion thereof) with a specific FOIA exemption and the agency's justification for nondisclosure. *See* 484 F.2d at 827.

the redaction of employees' home telephone numbers serves the privacy interests that Exemption 6 is designed to serve. *See Kidd v. Dep't of Justice*, 362 F. Supp. 2d 291, 296-97 (D.D.C. 2005) (holding that agency properly withheld employee's home telephone number pursuant to Exemption 6). The Court also agrees that redacting the names of employees who were not involved in the matters raised by Schmidt is protected under Exemption 6, as the public has little interest in the disclosure of such individuals' identities. *See Judicial Watch, Inc. v. Food & Drug Admin.*, 449 F.3d 141, 153 (D.C. Cir. 2006) (approving redaction of employee names under Exemption 6 where public interest in disclosure is uncertain). Accordingly, the Court finds that the agency has properly invoked Exemption 6.

Therefore, the Court shall grant Defendant's motion for summary judgment with respect to its application of FOIA Exemptions 5 and 6.

C. *Segregability*

FOIA requires that "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt." 5 U.S.C. § 552(b). The Court is required to make a finding as to the segregability of withheld documents. *Morley v. CIA*, 508 F.3d 1108, 1123 (D.C. Cir. 2007). The Lankford Declaration and the *Vaughn* index filed by Defendant demonstrate that only information pertaining to a valid exemption was redacted, and only four documents consisting entirely of privileged information were withheld in their entirety. Thus, Defendant has shown with "reasonable specificity" that the documents cannot be further segregated. *See Armstrong v. Exec. Office of the President*, 97 F.3d 575, 578 (D.C. Cir. 1996). The Court therefore finds that the agency has satisfied its obligation under FOIA to provide reasonably segregable portions of the records to Schmidt.

D.  *Timeliness*

Schmidt argues that he should be entitled to relief because USAID was not timely in its production of documents in response to his requests. However, "a lack of timeliness or compliance with FOIA deadlines does not preclude summary judgment for an agency, nor mandate summary judgment for the requester." *Landmark Legal Found. v. EPA*, 272 F. Supp. 2d 59, 68 (D.D.C. 2003). "[O]nce the Court determines that the agency has, 'however belatedly, released all nonexempt material, [it has] no further judicial function to perform under the FOIA." *Muhammad v. U.S. Customs & Border Prot.*, 559 F. Supp. 2d 5, 7 (quoting *Perry v. Block*, 684 F.2d 121, 125 (D.C. Cir. 1982)). Moreover, to the extent that Schmidt seeks as a sanction monetary relief such as a fee waiver, his claim is not authorized by FOIA. *See* 5 U.S.C. § 552(a)(4)(B) (stating that federal courts have jurisdiction only to "enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld . . . ."). Therefore, Schmidt is not entitled to sanctions as a remedy for the untimeliness of USAID's responses.

E.  *Allegations of Possible Misconduct*

On July 1, 2009, Schmidt filed a [28] Notice Regarding Allegations of Possible Defendant Misconduct. In this Notice, Schmidt alleges that Defendant's counsel has violated rules of professional conduct and otherwise acted improperly by admonishing Schmidt for violating the Local Rules of this Court. However, *pro se* litigants are expected to comply with the Local Rules of this Court, *see Slovinec v. Am. Univ.*, 520 F. Supp. 2d 107, 110-11 (D.D.C. 2007), and it is not improper for Defendant's counsel to oppose filings that are not in compliance. Therefore, the Court finds that Schmidt's allegations have no merit.

## IV. CONCLUSION

For the reasons explained above, the Court shall GRANT Plaintiff's [26]/[27] Motion Requesting the Court's Permission and Acceptance of Filings that Deviate from Local Rule 7(h) and 7(e). The Court shall GRANT-IN-PART and DENY-IN-PART WITHOUT PREJUDICE Defendant's [16] Motion for Summary Judgment, granting the motion as to all issues except the adequacy of the search regarding electronic back-up tapes and records in the Office of the Inspector General, the Office of Financial Management, or the Office of the General Counsel, with respect to which the motion shall be denied without prejudice. The Court shall also DENY Plaintiff's [19] Construed Motion for Summary Judgment, denying without prejudice with respect to the adequacy of the search as described above. The Court shall permit the parties to file renewed motions for summary judgment on this limited issue based on a supplemented record. An appropriate Order accompanies this Memorandum Opinion.

Date: March 18, 2010

                                              /s/
                                    COLLEEN KOLLAR-KOTELLY
                                    United States District Judge